IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) CHAPTER 7 |
| PATRICIA JEAN CUBBAGE | ) CASE NO. 5-04-00803 |
| | ) |
| DEBTOR. | ) |

| | |
|---|---|
| RITCHIE P. GILLESPIE, MD | ) |
| CRYSTL D. WILLISON, MD | ) ADVERSARY PROCEEDING |
| | ) |
| PLAINTIFFS, | ) NO. 04-41 |
| | ) |
| v. | ) |
| | ) |
| PATRICIA JEAN CUBBAGE | ) |
| TROY ABBOTT, ESQ. | ) |
| JOHN G. LEAKE, | ) |
| Trustee in Bankruptcy for | ) |
| Patricia Jean Cubbage | ) |
| | ) |
| DEFENDANTS. | ) |

MEMORANDUM DECISION

The issue presented in this adversary proceeding is whether certain documents executed by the Debtor to the plaintiff physicians constitute, either individually or collectively, an equitable assignment to the extent of the Plaintiffs' professional charges of funds to which she became entitled as a result of the settlement of the personal injury claim which had precipitated the need for the medical services rendered by such doctors. This matter is before the Court upon competing motions for summary judgment and a joint stipulation of facts and

documents.

## FINDINGS OF FACT

Patricia Jean Cubbage (the Debtor) filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code on May 5, 2004, in the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division. Ritchie P. Gillespie, M..D. and Crystl D. Willison, M.D. are medical doctors specializing in neurosurgery and currently practicing in Harrisonburg, Virginia. Troy Abbott, Esq., is an attorney at law who has possession of this funds to which Plaintiffs claim a lien. He is named as a Defendant solely in his capacity as an Escrow Agent. Defendant John G. Leake is the Debtor's Chapter 7 Bankruptcy Trustee.

On or about March 3, 2001, Cubbage was operating a 1997 Mitsubishi when she was involved in an automobile accident allegedly caused by Ivan Stanley Dove. As a result of the motor vehicle accident, Cubbage sustained serious injuries including injuries to her head and neck which required medical treatment. On or about September 4, 2001, Cubbage sought medical treatment form Willison and Gillespie. As of that date, Cubbage did not have adequate funds to pay for her medical treatment, nor did she have medical insurance. On September 4, 2001, Cubbage signed a document which read, "I hereby direct and authorize my attorney to pay all unpaid medical bills presented to him/her before the distribution of any proceeds to me out of any sums received by him/her to which I may be entitled. A copy of this Authorization shall have the

same force and effect as the original." (Exhibit 3.)[1] Also on September 4, 2001, Cubbage authorized Travelers Insurance Company and Erie Insurance Company to make payment directly to Willison from funds paid as a result of her motor vehicle accident. (Exhibits 1[2] and 2.[3]) On September 24, 2001, Cubbage signed statements, identified as Exhibits 4-6, similar to Exhibits 1-3, except that they included the name of Dr. Gillespie also as payee, and Exhibit 4[4] also inserted

---

[1] Exhibit 3 is a document on the Plaintiffs' letterhead with the Debtor's name, address, date of birth and social security number and the following language: "I hereby direct and authorize my attorney to pay all unpaid medical bills presented to him/her before the distribution of any proceeds to me out of any sums received by him/her to which I may be entitled. A copy of this Authorization shall have the same force and effect as the original. Dated this 4 [sic] day of September, 2001; Signed: /s/ Patricia J. Cubbage; Witnessed: /s/ Sandra Henschel, Date: 9/4/2001; PLEASE PROTECT OUR LIEN WHEN CLAIM SETTLEMENT IS MADE."

[2] Exhibit 1 is a document on the Plaintiffs' letterhead with the Debtor's name, address, date of birth and social security number and the following language: "I, Patricia Jean Cubbage, hereby give the following insurance company, Travelers Insurance permission to make payment directly to Crystl D. Willison, MD for any services rendered to myself regarding my accident. I understand this money shall be paid from and before any settlement I would have received from the insurance company for my injuries incurred in the accident. A copy of this Authorization shall have the same force and effect as the original. Signed: /s/ Patricia J. Cubbage, Date: 9/4/2001; Witnessed: /s/ Sandra Henschel, Date: $9/4/2001. PLEASE PROTECT OUR LIEN WHEN CLAIM SETTLEMENT IS MADE."

[3] Exhibit 2 is a document on the Plaintiffs' letterhead with the Debtor's name, address, date of birth and social security number and the following language: "I, Patricia Jean Cubbage, hereby give the following insurance company, Erie Insurance permission to make payment directly to Crystl D. Willison, MD for any services rendered to myself regarding my accident. I understand this money shall be paid from and before any settlement I would have received from the insurance company for my injuries incurred in the accident. A copy of this Authorization shall have the same force and effect as the original. Signed: /s/ Patricia J. Cubbage, Date: 9/4/2001; Witnessed: /s/ Sandra Henschel, Date: $9/4/2001. PLEASE PROTECT OUR LIEN WHEN CLAIM SETTLEMENT IS MADE."

[4] Exhibit 4 is a document on the Plaintiffs' letterhead with the Debtor's name, address, date of birth and social security number and the following language: "I hereby direct and authorize my attorney to pay to Ritchie P. Gillespie, MD/Crystl D. Willison, MD all unpaid medical bills presented to him/her before the distribution of any proceeds to myself out of any sums received by him/her to which I may be entitled. Please protect our lien when claim

the names of Drs. Willison and Gillespie immediately before "all unpaid medical bills" while Exhibit 3 had not included either of their names. While Ms. Cubbage testified at the meeting of creditors in this bankruptcy case that she signed the September 24th documents in the operating room, that they were not explained to her and that she "wasn't in any shape to read it" [T. 12], she further testified that she had no reason not to understand the substantially similar documents she signed on September 4th [T. 12-3]. During that same session she answered "uh-huh" to counsel's question whether she "understood that [she] had assigned to Dr. Willison and Dr. Gillespie the proceeds from [her] personal injury settlement to pay for [her] medical expenses" [T. 13] before her attorney was able to object to the use of the word "assigned", but further stated a few lines farther down that her understanding of the documents she signed on September 4 was, "[t]hat when I received any money from the injury, you know, I would pay them." Id.. She further acknowledged that "the only way to receive the medical care . . . from Dr. Willison and Dr. Gillespie was to promise them, in effect, that you would pay them once you got paid from your motor vehicle injury". [T. 14]

On September 4, 2001, Dr. Willison provided medical care, presumably an office consultation, to Cubbage to treat the injuries she sustained as a result of her motor vehicle accident for which a charge of $80.00 was made. Drs. Willison and Gillespie, apparently collectively, operated on Ms. Cubbage on September 24, 2001. As a result of services rendered by Willison and Gillespie to Cubbage, she became indebted to Willison and Gillespie in the amount of $18,199.70. (Exhibit 9.) According to their billing statement each of them charged

---

settlement is made. A copy of this Authorization shall have the same force and effect as the original. Dated this 24 [sic] day of September, 2001; Signed: /s/ Patricia J. Cubbage; Witnessed: /s/ Sandra Henschel, Date: 9/4/2001;

4

$11,000 for professional services rendered to the Debtor on September 24. Exhibit 9 reflects that an insurance payment of $4,000.30 on that same date against a portion of Dr. Willison's charges, but whether such amount was actually received or simply represents some kind of writedown against such physician's individual charges is not disclosed in the documentation or the parties' stipulation of facts.

On February 26, 2003, Cubbage filed a Motion for Judgment in the Rockingham County Circuit Court against Ivan Stanley Dove, claiming that Dove was legally responsible for the injuries Cubbage sustained as a result of the March 3, 2001 motor vehicle accident. The Circuit Court of Rockingham County dismissed the Motion for Judgment by order of December 4, 2003 as the matter had been resolved by the parties. Cubbage had settled her claim through her attorney for $112,000, of which $72,900 was Cubbage's portion after legal fees and expenses. This amount is listed in Cubbage's Schedules as, "personal injury settlement, location: in debtor's possession." Counsel for the parties have stipulated that the entire amount of this settlement was paid by Travelers Insurance Company. On June 14, 2004, Cubbage testified at the Meeting of Creditors that $72,900 of her personal injury settlement was in the possession of her attorney, Troy Abbott. Cubbage had not paid the $18,199.70 at the time of the hearing on this matter.

After a review of the bankruptcy case file the Court takes judicial notice of the facts that the Debtor in Schedule C accompanying her Chapter 7 bankruptcy petition claimed the personal injury settlement as exempt from her bankruptcy estate by virtue of Va. Code § 34-28.1[5]

---

[5] "Except for liens created under Article 7.1 (§ 8.01-66.2 et seq.) of Title 8.01, Article 5 (§ 54.1-3932 et seq) of Title 54.1, and Chapter 19 (§ 63.2-1900 et seq.) of Title 63.2, all causes of action for personal injury or wrongful death and the proceeds derived from court award or settlement shall be exempt from creditor process against the injured person or statutory beneficiary as defined in Article 5 (§ 8.01-50 et seq.) of Title 8.01. It shall not be required that a

5

(Michie, LEXIS through 2004), that the meeting of creditors was held and concluded on June 14, 2004, that the plaintiffs in this adversary proceeding were listed as creditors, and that neither the Chapter 7 bankruptcy Trustee nor any creditor objected to such exemption claim. The Trustee was named as a defendant in this proceeding but has not filed any answer and is in default.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(b) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. More specifically, the Court concludes that it has "related to" jurisdiction within the contemplation of § 1334(b), *supra*, of this adversary proceeding in which the Plaintiffs, medical doctors who rendered professional services to the Debtor, seek to establish their entitlement to a portion of pre-petition personal injury proceeds received by the Debtor in connection with a tort suit which she filed in Virginia state court and which the latter without objection has claimed as exempt pursuant to *Va. Code* § 34-28.1, *supra*, because its resolution will affect whether the Plaintiffs have any claim against the Debtor's exempt property and therefore whether they will have any claim against the bankruptcy estate. *See In re Toledo, 170 F.3d 1340, 1344-46 (11th Cir. 1999). See generally,* **1 Collier on Bankruptcy** ¶ 3.01[4][c][iii] (LexisNexis 2004).

Whether such a proceeding is a "core" bankruptcy matter pursuant to 28 U.S.C. §

---

household designate any property exempt under this section in a deed in order to secure such exemption. The provisions of this section shall not be construed to affect any voluntary assignment of the proceeds or anticipated proceeds of a personal injury or wrongful death award or settlement as permitted by § 8.01-26."

6

157(b)(2)[6] is a much more difficult question. The proceeding seeks to enforce a claim not against property of the bankruptcy estate, but against undisputed exempt property of the Debtor. While the resolution of this dispute is undoubtedly a matter of keen interest to the parties involved, it does not appear to involve the administration of the estate (§ 157(b)(2)(A)) and only arguably "the adjustment of the debtor-creditor . . . relationship" (§ 157(b)(2)(O)), the Debtor having already received a discharge from her debt to the Plaintiffs. Such a determination does not affect this Court's jurisdiction to hear this matter, only the status of its findings of fact on any subsequent review of this decision by the District Court. In any event its conclusions of law will be determined de novo. While a detailed consideration of whether this adversary proceeding is a "core" or "non-core" matter might prove a stimulating intellectual exercise, the Court concludes that the parties' stipulation that it is a "core" proceeding, even if mistaken, is equivalent to their consent for this Court to determine the matter and render a final judgment therein, subject of course to their right of appeal to the District Court. *See generally, In re Apex Exp. Corp., 190 F.3d 624 (4th Cir. 1999).*

The legal principles governing consideration of a motion for summary judgment are clear. Federal Rule of Bankruptcy Procedure 7056, which incorporates F.R.C.P. 56, provides that such a motion shall be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

The documents relevant to the Court's determination are Exhibits # 1, 3, 4, and 5. Exhibit 4 authorizes and directs the Debtor's attorney to make payment specifically to the

---

[6] The parties have stipulated that the adversary proceeding is a "core proceeding" pursuant to 28 U.S.C § 157(b)(2)(A) and (O).

Plaintiffs. Exhibit 3, on the other hand, authorizes and directs the attorney to pay the Debtor's unpaid medical bills but does not limit it to the unpaid bills owing to Drs. Willison and Gillespie. The Debtor's attorney, Mr. Abbott, is a party to this adversary proceeding purely in his capacity as stakeholder and therefore the funds will be disbursed by him in accordance with the final judgment in this proceeding. Exhibits 1 and 6 authorize but do not direct Travelers to pay the medical bills, but also include the following significant language, "I understand this money shall be paid from and before any settlement I would have received from the insurance company for my injuries incurred in the accident."

Although *Va. Code* § 34-28.1, *supra,* creates an exemption for personal injury and wrongful death actions and the proceeds of same, such statute expressly provides that it "shall not be construed to affect any voluntary assignment of the proceeds or anticipated proceeds of a personal injury or wrongful death award or settlement as permitted by § 8.01-26." The cited statute (*Va. Code* § 8.01-26 (2000 Repl. Vol.)), which generally provides that only *ex contractu* cause of action are assignable, further provides that the section "shall not prohibit any injured party or his estate from making a voluntary assignment of the proceeds or anticipated proceeds of any court award or settlement as security for new value given in consideration of such voluntary assignment." It being uncontested that the attorney disbursement authorization forms were signed prior to the performance of the professional services rendered by Drs. Gillespie and Willison, the condition that the "voluntary assignment" must be executed before "new value" is given to be protected under the statutory language has been met. Accordingly, the issue before the Court is whether the forms at issue or the agreements they embody qualify as "assignments" of the personal injury settlement proceeds to the Plaintiffs.

Among other cases the Plaintiffs cite a decision of the District Court for this District, *Community Hospital v. Musser*, 24 B.R. 913 (W.D. Va. 1982), which considered language which, as the Plaintiffs point out, is very similar to the language in the forms signed by the Debtor in this case. That opinion held that where the evidence indicated that the bankruptcy debtor had signed the relevant form knowingly, an equitable assignment was created which was effective in bankruptcy. While that decision is very helpful and instructive, it is not "on all fours" with the present adversary proceeding for two reasons. First, the title of the form signed by the debtors in that case expressly identified it as an "Assignment". The forms involved in the pending matter contain no such title or language using the words "assign" or "assignment". In *Musser* the parties did not dispute that the forms constituted an "assignment" so the Court had no reason to address whether the language of the document was sufficient to create one. Here counsel for the Debtor asserts that the language of the forms devised by Drs. Gillespie and Willison is simply inadequate to have such legal effect.

Counsel for the Plaintiffs also relies upon an unpublished Fourth Circuit decision, *Wal-Mart Stores v. Carpenter*, 36 Fed. Appx. 80 (4th Cir. 2002), which recognized an equitable lien in favor of an ERISA health benefit plan upon an insurance recovery for medical expenses and lost wages which the Plan had advanced for its participant's benefit. Rather than focusing on the specific language of the forms signed by the participant, however, the Court seemed to place greater weight on the fact that the ERISA plan created a legal obligation that it be repaid from any injury recovery later obtained by its plan participant. The decision upheld the lower courts' decision in favor of the ERISA plan upon the reasoning of such courts. The opinion of the Bankruptcy Court imposed on equitable lien on the insurance recovery as a matter of "federal

common law". *In re Carpenter*, 245 B.R. 39, 46-7 (Bkrtcy. E.D. Va. 2000). The question presented in the matter before this Court, however, is whether the Debtor assigned her recovery to her physicians as a matter of *Virginia* law.

Similarly, in the case of *In re Duty*, 78 B.R. 111 (Bankr. E.D. Va. 1987), cited by counsel for the Plaintiffs, the Debtor had signed multiple "Assignment of Insurance Benefits" forms. In addition to the title of the form itself, the emergency room secretary who witnessed the Debtor's signature to the form "testified that prior to signing the form, all patients are informed as to the nature and consequences of the assignment, because it provides for a mode of payment which must be arranged before the hospital provides treatment". 78 B.R. at 112. It is reasonable to observe that one who signs a document identifying itself as an "assignment" at its very top is in a weak position to contend that he never intended in fact to make an actual assignment of the insurance proceeds at issue.

Exhibits 3 and 4 in the pending proceeding were of course prepared by or on behalf of the Plaintiffs, gave direction to the patient's attorney, were taken into possession by the Plaintiffs' employee immediately after being signed, and were required by the Plaintiffs before rendition of the professional medical services they provided for their patient's benefit. Such a state of facts appears to implicate the following principle regarding equitable assignments

> When, for a valuable consideration from the payee, an order is drawn upon a third person and made payable out of a particular fund, then due or to become due from him to the drawer, and is delivered to the payee, it operates as an equitable assignment pro tanto of the fund and constitutes a lien upon it in the hands of him who owes the debt or has possession of the fund out of which the order is made payable.

2A **Michie's Jurisprudence** 327, Assignments § 20 (LexisNexis 2004), citing *Virginia*

*Machinery, etc., Co. v. Hungerford Coal Co.*, 182 Va. 550, 29 S.E.2d 359 (1944). That decision, which dealt with a letter from a contractor authorizing the property owner to make payment directly to a supplier of materials, contains the following language:

> Upon principle and upon authorities cited, the oral agreement between Franklin and the Well Company constituted a valid assignment of the funds in question. The letters passing between Mutual and the Well Company did not constitute the assignment; they merely evidenced notice of the assignment to Mutual and provided the form of payment. The assignment depended upon the agreement between Franklin and the Well Company. That agreement, according to the undisputed evidence, transferred absolutely and unconditionally all of the interest of the assignor in the fund, and Franklin testified that such was his intention.

29 S.E.2d at 363. In the subsequent case of *Alexander Building Corporation, Inc. v. Richmond Plumbing & Heating Supplies, Inc., 213 Va. 470, 193 S.E.2d 696 (1973)*, a subcontractor signed a similar letter directed to the general contractor for the benefit of a supplier revoked the letter before final payment had been made to the supplier. The trial court's decision in favor of the supplier against the general contractor is subject to two interpretations. On the one hand, the Court stated that "whether there was an assignment, evidenced by the letter, presented a factual issue for the trial court to determine." 193 S.E.2d at 698. On the other hand, it cited the *Virginia Machinery* decision to the effect that

> An order upon a third person payable out of a particular fund, communicated to such person and delivered to the payee operates as an equitable assignment pro tanto and constitutes a lien upon the fund. The assignment is sufficient if the debtor would be protected in making payment in accordance with it. . . . 29 S.E.2d [at] 362-63 . . . Here, unquestionably, Alexander would have been protected if it had complied with the terms of the letter in making final payment. As it disregarded the letter in violation of the assignee's rights, the trial court correctly held Alexander liable to Richmond for the amount owed by Satterwhite.

Id. It seems evident that Mr. Abbott would be protected in making payment to the Plaintiffs in the amount of the Debtor's unpaid medical bills owing to them. He has been expressly authorized

and directed by his client to do that very thing. Nevertheless, the Virginia decisions seem to focus on the nature of the precise agreement between the "assignor" and the "assignee" rather than the wording of the document itself. The testimony of the Debtor at the Meeting of Creditors is somewhat conflicting as to what her intent was and there is no testimony before the Court from the Plaintiffs' employee who met with the Debtor, discussed the documents with her, and witnessed her signature to them. Virginia authority is clear that simply a promise to make payment from a fund when the funds are received is not an equitable assignment of those funds. *See* **2A Michie's Jurisprudence** 324-330, Assignments §§ 19-20 (LexisNexis 2004). On the other hand, if it was the Debtor's understanding, consistent with the wording of the documents she signed, to authorize the insurance company and direct her attorney to pay the medical bills owing to Drs. Willison and Gillespie before she gained possession or control over the settlement funds, an equitable assignment was effected and the Plaintiffs are entitled to be paid from the otherwise exempt personal injury settlement. While the weight of the evidence supports the Plaintiffs' claim, the Court is not in a position to say in complete confidence without observing the witnesses or hearing their testimony that there is no genuine issue of fact in dispute. Accordingly, it must deny the competing motions for summary judgment and direct that the issue be set for an evidentiary hearing. An order to such effect will be entered contemporaneously with the signing of this decision.

This 2nd day of March, 2005.

William F. Stone, Jr.
United States Bankruptcy Judge